O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#16/19**
**Dec. 12 hrg off**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-6540 PSG (PJWx) | Date | December 7, 2011 |
|---|---|---|---|
| Title | Pinkberry, Inc., et al. v. JEC International Corp., et al. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **(In Chambers) Order GRANTING Motion to Dismiss**

Before the Court is Defendants Masako Kawashima and Snola Inc.'s motion to dismiss Plaintiffs Pinkberry, Inc. and Pinkberry Franchising Company's (collectively "Plaintiffs") complaint. *See* Dkt. #16. The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving and opposing papers, the Court GRANTS the motion to dismiss the federal claims for lack of subject matter jurisdiction and DISMISSES Plaintiffs' remaining state law claims because it has no discretion to retain supplemental jurisdiction over them.

I.    Background

Plaintiffs and their Defendant counterparts, JEC International Corporation ("JEC"), Snola, Inc. ("Snola"), Masako Kawashima, and Kazuhiko Morioka (collectively "Defendants") are competitors in the low-calorie, fat-free, tart-tasting frozen yogurt business. *Compl*. 2:1-4, ¶ 25. Plaintiffs are California corporations. *Compl*. 2:1-2, ¶ 7. Snola's corporate headquarters are in California, JEC has a place of business in Japan but also an office in California, and Masako Kawashima and Kazuhiko Morioka, officers of Snola and JEC, reside in California. *Compl*. ¶¶ 8-11. Kawashima and Morioka are citizens of Japan. *Kawashima Decl*. 1:19-25. All of the Defendants share the same business and residential address. *Compl*. 4:28.

Since January 2005, Plaintiffs have sold frozen yogurt under the name PINKBERRY. *See Compl*. ¶ 17. Since then, Plaintiffs have registered PINKBERRY as a trademark in the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#16/19**
**Dec. 12 hrg off**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-6540 PSG (PJWx) | Date | December 7, 2011 |
|---|---|---|---|
| Title | Pinkberry, Inc., et al. v. JEC International Corp., et al. | | |

United States and other countries, and have opened or franchised numerous stores, including international locations. *See Compl*. ¶¶ 17, 20, 21, 23, 24. The PINKBERRY trademark is distinctive, famous, and is widely recognized by consumers. *Compl*. ¶ 22. For their part, Defendants sell frozen yogurt under the name SNOLA in two stores in California and one in Japan. *Compl*. ¶ 25.

In 2008, Plaintiffs began to invest resources to open a store in Japan. *See Compl*. ¶ 30. Defendants, however, had already registered an identical PINKBERRY trademark in Japan on August 14, 2006. *Compl*. ¶ 27. Plaintiffs sought to obtain the trademark from Defendants, but were unsuccessful when they were unwilling to meet Defendants' monetary demands. *Compl*. ¶¶ 31, 32. Plaintiffs then initiated proceedings before the Japan Patent Office to cancel Defendants' registration of the PINKBERRY trademark. *See Wang Decl*. ¶ 1. These cancellation proceedings are still pending. *Id*.

To date, Defendants have made no use of the trademark in Japan. *Compl*. ¶ 29. Instead, Defendants have intentionally and effectively blocked Plaintiffs' entry into the Japanese market, caused harm to their reputation, and interfered with their business relationships. *See Compl*. ¶¶ 7, 16, 28-30, 33, 34.

With the registration dispute in Japan still pending, Plaintiffs bring this suit, alleging various causes of action for unfair competition, trademark dilution, and interference with economic and contractual relationships. Plaintiffs seek, inter alia, damages and an order enjoining Defendants from using the PINKBERRY trademark in Japan. *Compl*. 15:25-16:22. Defendants Masako Kawashima and Snola now move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), claiming that subject matter jurisdiction does not exist because the Lanham Act does not extend to Defendants' activities in Japan and because Plaintiffs have failed to state a claim on which relief can be granted. *Mot*. 1:18-20.

II.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move for dismissal of a claim for lack of subject matter jurisdiction. Because federal courts are courts of limited jurisdiction, the Court presumes lack of jurisdiction, and the party seeking to invoke the Court's jurisdiction bears the burden of proving that subject matter jurisdiction exists. *See Kokkonen v.*

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#16/19**
**Dec. 12 hrg off**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-6540 PSG (PJWx) | Date | December 7, 2011 |
|---|---|---|---|
| Title | Pinkberry, Inc., et al. v. JEC International Corp., et al. | | |

*Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A party challenging the court's jurisdiction under Rule 12(b)(1) may do so by raising either a facial attack or a factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citing 2 James W. Moore, Moore's Federal Practice § 12.30 [4] (3d ed. 1999)).

To attack a complaint facially, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When evaluating a facial attack to jurisdiction, the Court must accept the factual allegations in plaintiff's complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). In contrast, when faced with a factual attack, the Court may consider extrinsic evidence. *See White*, 227 F.3d at 1242.

While they are silent on the distinction, Defendants appear to make both a facial and a factual attack. Defendants argue that dismissal is proper if the facts in the Complaint are taken as true. *See Mot.* 6:4-6. Defendants also provide extrinsic evidence in the form of a declaration stating that Masako Kawashima and Kazuhiko Morioka are citizens of Japan. *Kawashima Decl.* 1:19-25.

To the extent that Defendants make a factual attack, Plaintiffs have requested an evidentiary hearing. *Opp*. 2:19-27. The Court finds an evidentiary hearing is not necessary. *See Rosales v. U.S.*, 824 F.2d 799, 803 (9th Cir. 1987) ("A district court *may* hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question") (emphasis added). There are no factual disputes to resolve. Defendants' declaration of Japanese citizenship is not inconsistent with Plaintiffs' allegations that Kawashima and Morioka reside in Los Angeles.[1] Furthermore, a hearing is unnecessary because even taking the Plaintiffs' allegations as true, as well as accepting the declaration filed by Plaintiffs, the Court lacks subject matter jurisdiction.

---

[1] Defendants also filed a Certification of Interested Parties, stating that Masako Kawashima resides in Los Angeles but that Kazuhiko Morioka resides in Japan. Plaintiffs allege that both reside in Los Angeles. Defendants' Certification, however, includes no statement of personal knowledge and is therefore insufficient to serve as extrinsic evidence for the purposes of Defendants' Motion. *See* L.R. 7-7 (declarations shall conform to the requirements of Fed. R. Civ. P. 56(c)(4)); Fed. R. Civ. P. 56(c)(4) (declarations must be made on personal knowledge). Thus, the Court's analysis assumes that Kawashima and Morioka reside in Los Angeles.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#16/19**
**Dec. 12 hrg off**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-6540 PSG (PJWx) | Date | December 7, 2011 |
|---|---|---|---|
| Title | Pinkberry, Inc., et al. v. JEC International Corp., et al. | | |

III.   Discussion

   A.   Extraterritorial Jurisdiction

The extraterritorial reach of the Lanham Act is analyzed under a three-part test. *See Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 612 (9th Cir. 2010). "For the Lanham Act to apply extraterritorially: (1) the alleged violations must create some effect on American foreign commerce; (2) the effect must be sufficiently great to present a cognizable injury to the plaintiffs under the Lanham Act; and (3) the interests of and links to American foreign commerce must be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority." *Id.*

   1.   Effect on U.S. Foreign Commerce

The location of the acts that have caused harm bears on whether there is an effect on U.S. foreign commerce. *See Love*, 611 F.3d at 613 (no effect on U.S. foreign commerce where idea for allegedly infringing music originated with British entities, albums were manufactured in Germany by a company with London offices, and music never reached U.S. market). However, where a defendant directs acts committed abroad from within the United States that have harmed a U.S. corporation, there is some effect on U.S. foreign commerce. *See Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552, 554-55 (9th Cir. 1989) (some effect on U.S. foreign commerce existed where defendants in the United States organized and directed the manufacture and sale of counterfeit shoes in Mexico and their subsequent importation into the United States).

Defendants argue that there is an insufficient effect on U.S. foreign commerce because the trademark at issue was registered and used only in Japan. *Reply* 2:8-13. However, like *Reebok*, while Defendants' registration and control of the trademark occurred only in Japan, Defendants have caused these acts to occur from within the United States. Snola is a California corporation with headquarters in California, JEC maintains an office in California, and Kawashima and Morioka are officers of both Snola and JEC and reside in California. *Compl.* ¶¶ 8-11. Furthermore, these acts have harmed Plaintiffs, U.S. corporations, by prohibiting Plaintiffs' business expansion into Japan, causing lost sales, and harming Plaintiffs' reputation and business relationships. *See Compl.* ¶¶ 7, 16, 30, 34, 62. Thus, the harm from Defendants' acts abroad has some effect on U.S. commerce.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#16/19**
**Dec. 12 hrg off**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-6540 PSG (PJWx) | Date | December 7, 2011 |
|---|---|---|---|
| Title | Pinkberry, Inc., et al. v. JEC International Corp., et al. | | |

    Defendants also argue there is no effect on U.S. foreign commerce because there is no manufacture, export, or import of products bearing the allegedly infringing trademark into, or out of, the United States. *See Reply* 2:10-14. While this is a distinction with some weight, *see Steele v. Bulova Co.*, 344 U.S. 280, 286-87 (1952) (effect on U.S. foreign commerce existed where counterfeit watches sold in Mexico and carried back into the United States were made with materials imported from the United States), it is not dispositive. It is also possible for an effect to occur in ways that do not require physical production or movement of goods in the United States. *See Ocean Garden, Inc. v. Marktrade Co., Inc.*, 953 F.2d 500, 503 (9th Cir. 1991) (effect on U.S. foreign commerce existed where plaintiff alleged loss of revenue as a result of allegedly infringing products produced in Mexico and shipped abroad).[2]

    As previously discussed, Plaintiffs are U.S. corporations who, like *Ocean Garden*, have experienced a loss of revenue as a result of Defendants' acts. Plaintiffs are also unable to expand the sale of their products into another country. While Defendants may not be engaged in the physical movement of goods into or out of the United States, Defendants' actions have restricted Plaintiffs' ability to engage in foreign commerce. Plaintiffs' alleged injuries, including the inability to bring their business to Japan, "arguably" have some effect on U.S. foreign commerce. *See Star-Kist Foods, Inc. v. P.J. Rhoades & Co.*, 769 F.2d 1393, 1395 (9th Cir. 1985).

        2.    <u>Cognizable Injury</u>

    A loss of current and prospective business opportunity is a cognizable injury under the Lanham Act. *See Star-Kist*, 769 F.2d at 1395 (inability of U.S. corporation to sell product in Philippines was arguably a cognizable injury under the Lanham Act); *see also Ocean Garden*, 953 F.2d at 503 (monetary injury is cognizable under the Lanham Act). However, where the connection between the loss of business and its proximate cause is too attenuated, there is no cognizable injury. *See Love*, 611 F.3d at 613 (plaintiff musician's claim that sale of tickets to his U.S. concerts decreased as a result of allegedly infringing music sales in Europe was "too great a stretch" to present a cognizable injury under the Lanham Act).

---

    [2] Although the goods in *Ocean Garden* were shipped through a U.S. foreign trade zone in Los Angeles, the Ninth Circuit held that this was an alternative ground for jurisdiction and did not consider it when deciding whether there was an effect on U.S. foreign commerce. 953 F.2d at 503-04.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#16/19**
**Dec. 12 hrg off**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-6540 PSG (PJWx) | Date | December 7, 2011 |
|---|---|---|---|
| Title | Pinkberry, Inc., et al. v. JEC International Corp., et al. | | |

Like *Star-Kist*, Defendants' acts effectively preclude Plaintiffs from expanding and selling their product in the Japanese market, thereby causing Plaintiffs to lose business. *See Compl.* ¶ 34. Furthermore, Plaintiffs claim that Defendants' acts have tortiously interfered with Plaintiffs' business relationships. *Compl.* ¶ 33. Here the tortious interference and loss of business clearly flows from Defendants' acts, distinguishing this case from *Love*. Thus, Plaintiffs' injuries are cognizable injury under the Lanham Act.

> 3.  Effect on Commerce in Relation to Other Nations

The third element is dependent on the balancing of seven factors: (1) the degree of conflict with foreign law or policy, (2) the nationality or allegiance of the parties and the locations or principal places of business of any corporations involved, (3) the extent to which an order by a U.S. court can be expected to achieve compliance with the Lanham Act, (4) the relative significance of effects on the United States as compared with those elsewhere, (5) the extent to which there is an explicit purpose to harm or affect U.S. commerce, (6) the foreseeability of such effect, and (7) the relative importance to the violations charged of conduct that occurred within the United States as compared with conduct abroad. *See Star-Kist*, 769 F.2d at 1395-96.

> i.  Degree of Conflict

The first factor examines the degree of conflict with foreign law or policy. The Ninth Circuit's *Star-Kist* decision is instructive. 769 F.2d 1393. In *Star-Kist*, two California corporations disputed their trademark rights in the sale of canned fish in the United States and abroad. *Id.* at 1394. The defendant brought an action in the Philippine Patent Office to cancel the plaintiff's Philippine registration of the trademarks. *Id.* at 1395. In the course of litigation in the United States, the district court declined to adjudicate the right to use or register the trademarks in any country other than the United States. *Id.* The Ninth Circuit affirmed, noting that "[a]pplication of the Lanham Act to wholly foreign Philippine commerce could create a conflict with Philippine patent and trademark law and with *pending* proceedings in that country." *Id.* at 1396 (emphasis added).

As in *Star-Kist*, the present parties are U.S. corporations or have substantial ties to the United States. Like the defendant in *Star-Kist*, Plaintiffs seek U.S. adjudication and relief with

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#16/19
Dec. 12 hrg off

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-6540 PSG (PJWx) | Date | December 7, 2011 |
|---|---|---|---|
| Title | Pinkberry, Inc., et al. v. JEC International Corp., et al. | | |

respect to a foreign trademark while there is a pending cancellation proceeding, initiated by Plaintiffs, in that foreign country for the rights to that trademark. A decision by this Court as to how the PINKBERRY trademark may be used in Japan creates a serious potential for conflict with foreign law. *See also Gallup, Inc. v. Bus. Research Bureau (Pvt.) Ltd.*, 688 F. Supp. 2d 915, 923-24 (N.D. Cal. 2010) (substantial risk of conflict where trademark rights in question were being disputed contemporaneously in Pakistan); *Aristocrat Techs.*, 642 F. Supp. 2d at 1236-37 (high potential for conflict existed where Venezuelan government registered the trademark in dispute).

Plaintiffs argue this case should be controlled not by *Star-Kist*, but by the Ninth Circuit's decision in *Reebok*. *See Opp*. 8:6-13. In *Reebok*, a shoe manufacturer owning identical footwear trademarks in the United States and Mexico sought to enjoin the counterfeiting and sale of its shoes in Mexico and their subsequent importation into the United States. *Id*. at 553, 554-55. In granting a preliminary injunction, the district court noted it appeared that police in Mexico arrested the defendants, raided their warehouses, and charged them "with tax evasion, trademark and copyright counterfeiting and other crimes." *Reebok v. Int'l Marnatech Enters., Inc.*, 737 F. Supp. 1515, 1517 (C.D. Cal. 1989). The court then held there was no conflict between the Mexican and American courts because to its "knowledge there ha[d] been no adjudication on the merits in the Mexican courts." *Id*. at 1520.

On appeal, the Ninth Circuit noted that it was unclear what the nature of the ongoing litigation was when the district court issued its preliminary injunction, but stated that there was "no conflict because the litigation had not concluded," and that "Mexico and the United States have a common interest in preventing trademark violations and in the protection of any valid Mexican and American trademark registrations owned by [the plaintiff]." *Reebok*, 970 F.2d at 555-56.

While *Reebok* does share some similarities with the case at bar, it is not as factually similar as *Star-Kist*. Unlike *Reebok*, Plaintiffs do *not* currently possess valid trademark registrations in Japan. Moreover, in *Reebok* the nature of the proceedings in Mexico was unclear, leaving the Ninth Circuit to hold that the muddled record did not weigh against the exercise of jurisdiction. 970 F.2d at 555-56.[3] Here, however, Plaintiffs themselves assert that

---

[3] Plaintiffs also contend that under *Ocean Garden*, 953 F.2d at 503-04, there is no conflict because neither this proceeding nor the one in Japan has concluded. *Opp*. 7:25-8:5. However, in

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#16/19**
**Dec. 12 hrg off**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-6540 PSG (PJWx) | Date | December 7, 2011 |
|---|---|---|---|
| Title | Pinkberry, Inc., et al. v. JEC International Corp., et al. | | |

the cancellation proceedings before the Japan Patent Office, which are precisely about the validity and right to use the PINKBERRY trademark in Japan, are still pending. *Wang Decl*. ¶ 1. Because Plaintiffs seek to enjoin Defendants' use of a Japanese trademark in Japan, there is great potential for conflict with the pending trademark proceedings in Japan. Therefore, this factor weighs strongly against extraterritorial application of the Lanham Act.

   ii.  Nationality

  The second factor examines the nationality or allegiance of the parties and the locations or principal places of business of any corporations involved in the action. In *Reebok*, the Ninth Circuit held this factor weighed in favor of extraterritorial application of the Lanham Act where plaintiffs, a Massachusetts corporation and limited company of the U.K., both had substantial U.S. contacts, and where defendants, a Mexican citizen residing in California and the California corporation he owned, kept business records in their headquarters in California. 970 F.2d at 556-57.

  Here, Plaintiffs are California corporations. *Compl*. 2:1-2, ¶ 7. Masako Kawashima and Kazuhiko Morioka are citizens of Japan and residents of California. *Kawashima Decl.* 1:19-25; *Compl*. ¶¶ 10, 11. Snola has stores and its corporate headquarters in California and JEC has a place of business in Japan and an office in California. *Compl*. ¶¶ 8, 9. Furthermore, Kawashima and Morioka are officers of JEC and Snola, and all Defendants share the same business and residential address. *Compl*. 4:28, ¶¶ 10, 11. In sum, despite some ties to Japan, all Defendants have substantial ties to California. *Compl*. ¶¶ 8-11. Therefore, this factor weighs in favor of extraterritorial application of the Lanham Act.

   iii.  Achieving Compliance

  The third factor examines the extent to which an order by a U.S. court can be expected to achieve compliance with the Lanham Act. Compliance is likely to be effective where the defendant is a U.S. corporation. *See Ocean Garden*, 953 F.2d at 504 (injunction would be effective despite possibility that association of Mexican fisherman responsible for production of

---

*Ocean Garden* there were no pending foreign proceedings, a fact the Ninth Circuit explicitly relied on to distinguish *Star-Kist*. 953 F.2d at 503.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#16/19**
**Dec. 12 hrg off**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-6540 PSG (PJWx) | Date | December 7, 2011 |
|---|---|---|---|
| Title | Pinkberry, Inc., et al. v. JEC International Corp., et al. | | |

allegedly infringing products could continue production because evidence "indicated extensive involvement by [the defendant U.S. corporation] in these activities").

Like *Ocean Garden*, Plaintiffs are U.S. corporations and Defendants are either U.S. corporations or have substantial ties to the United States. Moreover, while it is unclear precisely which Defendant registered the trademark in Japan, Plaintiffs claim all Defendants control the mark. *See Compl*. ¶¶ 27, 28. Although a possibility exists that JEC, who has a principal place of business in Japan, or Kawashima and Morioka, who are Japanese citizens, could continue to engage in the harmful conduct, Defendants' substantial ties to the United States outweighs such concerns. Therefore, compliance is likely to be achieved and this factor weighs in favor of extraterritorial application of the Lanham Act.

      iv.  Relative Significance of Effects

The fourth factor examines the relative significance of effects on the United States as compared with those elsewhere. Where the parties are U.S. corporations engaged in commerce abroad, the effect on the United States "is relatively insignificant" as compared with the effect on foreign countries. *Star-Kist*, 769 F.2d at 1396.

While there is some effect on the United States as a result of Plaintiffs' inability to sell its frozen yogurt in Japan, the fact remains that such sales will occur in Japan, not the United States. Any sale of frozen yogurt to consumers in Japan, even by a corporation based in the United States, has a greater effect on Japanese commerce than on U.S. foreign commerce. Therefore, this factor weighs against extraterritorial application of the Lanham Act.

      v.  Purpose to Harm or Affect U.S. Commerce and Foreseeability

Factors five and six, respectively, examine the extent to which there is an explicit purpose to harm or affect American commerce and the foreseeability of such an effect. Intentional and unauthorized use of a U.S. corporation's trademark abroad amounts to an explicit purpose to harm U.S. commerce. *See Ocean Garden*, 953 F.2d at 504.

Plaintiffs claim that Defendants registered the PINKBERRY trademark in Japan after witnessing Plaintiffs' success in the United States. *Compl*. ¶ 27. Plaintiffs further claim that

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#16/19**
**Dec. 12 hrg off**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-6540 PSG (PJWx) | Date | December 7, 2011 |
|---|---|---|---|
| Title | Pinkberry, Inc., et al. v. JEC International Corp., et al. | | |

Defendants never intended to use the PINKBERRY trademark in Japan for any purpose other than to interfere with Plaintiffs' business relationships, to unfairly compete with Plaintiffs, and to extract money from Plaintiffs in exchange for the trademark. *Compl.* ¶ 28. While the Court accepts these allegations as true for purposes of this motion, it is also apparent Plaintiffs' claims depend on the legality of Defendants' registration of the PINKBERRY mark in Japan. If Defendants' registration was valid under the laws of Japan, then it cannot be said that Defendants had an explicit purpose to harm Plaintiffs through the unauthorized use of Plaintiffs' trademark, nor that Defendants could foresee an unlawful effect on U.S. commerce. The outcome of the Japanese proceeding therefore controls whether Defendants' actions can be described as unlawful or as the legal acts of a business competitor. Because factors five and six are dependent on the outcome of the Japanese proceeding, these factors are, at this time, neutral to the extraterritorial jurisdiction of the Court.

vi.   Relative Importance

The seventh factor examines the relative importance to the allegations of conduct that occurred within the United States as compared with conduct abroad. The act that lies at the heart of Plaintiffs' Complaint – that Defendants registered Plaintiffs' PINKBERRY trademark in Japan – necessarily occurred in Japan. *See Compl.* ¶ 27. However, Defendants directed these acts from the United States. *See Compl.* ¶¶ 8-11, 27. Thus, important conduct has occurred in both the United States and Japan, and it is unclear which is more important. *See Reebok*, 970 F.2d at 557 (not clear whether it was more important that the claimed infringement occurred in Mexico or that defendants directed the infringement from the United States). Therefore, this factor is neutral.

vii.   Weighing the Factors

The second and third factors weigh in favor of extraterritorial application of the Lanham Act, the first and fourth factors weigh against it, and the fifth, sixth, and seventh factors are neutral. On balance, the factors weigh against extraterritorial application of the Lanham Act. This case is ultimately controlled by *Star-Kist*. Like *Star-Kist*, Plaintiffs seek adjudication of the right to use a foreign trademark in a foreign country where the parties include U.S. corporations who are contemporaneously litigating the validity and rights to the trademark in that foreign country. Indeed, *Star-Kist* concerned only U.S. parties. Here, Kawashima and Morioka are

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#16/19**
**Dec. 12 hrg off**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-6540 PSG (PJWx) | Date | December 7, 2011 |
|---|---|---|---|
| Title | Pinkberry, Inc., et al. v. JEC International Corp., et al. | | |

citizens of Japan and JEC has a place of business in Japan. Consequently, this situation presents an even greater concern for "principles of international comity and fairness." *Star-Kist*, 769 F.2d at 1396.

    4.    <u>Extraterritorial Jurisdiction Does Not Exist</u>

While Plaintiffs' claims satisfy the first and second elements of the test for extraterritorial application of the Lanham Act, Plaintiffs are unable to satisfy the third element. Therefore, the Court cannot exercise extraterritorial jurisdiction and must dismiss Plaintiffs' Lanham Act claims for lack of subject matter jurisdiction.

    B.    <u>Remaining State Law Claims</u>

When a court dismisses on the merits a federal claim that served as the sole basis for subject matter jurisdiction, it has discretion to retain jurisdiction over any supplemental state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 728 (1966). However, when a federal claim is dismissed for lack of subject matter jurisdiction, a court has no discretion to retain supplemental jurisdiction over state law claims. *Scott v. Pasadena Unified School Dist.*, 306 F3d 646, 664 (9th Cir. 2002).

The Court's jurisdiction rested solely on Plaintiffs' Lanham Act claims, which the Court has dismissed for lack of subject matter jurisdiction. Consequently, the Court retains no discretion to hear Plaintiffs' supplemental state law claims and they are dismissed without prejudice.

IV.    <u>Conclusion</u>

Defendants' motion to dismiss Plaintiffs' Lanham Act claims for lack of subject matter jurisdiction is GRANTED and these claims are DISMISSED without prejudice. Since the Court has no discretion to retain supplemental jurisdiction, Plaintiffs' remaining state law claims are DISMISSED without prejudice. Defendants' motion to dismiss for failure to state a claim is rendered moot.

    **IT IS SO ORDERED.**

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**#16/19**
**Dec. 12 hrg off**

# CIVIL MINUTES - GENERAL

| Case No. | CV 11-6540 PSG (PJWx) | Date | December 7, 2011 |
|---|---|---|---|
| Title | Pinkberry, Inc., et al. v. JEC International Corp., et al. | | |